## MULLER v. FLAVIN.

1. Plaintiff's grandfather executed a warranty deed to K., who paid the grantor $1,200. Thereafter plaintiff's father, K., and her husband agreed that K. should deliver a deed of the land to plaintiff's father, he to pay her $1,200 five years thereafter, and to pay all taxes on the land, and to give up possession at the end of five years, if the money was

not paid. The father held possession for seven years, when he executed a release to K., who deeded the land to plaintiff. Prior to the release and the sale to plaintiff, defendant caused an execution against plaintiff's father to be levied on his interest in the land. *Held,* that the evidence sustained a finding that the transaction amounted to a mortgage on the land to K., and hence the purchaser in execution obtained the equity of redemption that plaintiff's father had in the land.

2. The plaintiff could not be subrogated to the rights of K. in an action brought by him against the purchaser in execution to quiet title, in which the purchaser claimed the transaction between K. and plaintiff's father and grandfather amounted to a mortgage, and that hence he had acquired the equity of  redemption, where K. had not been paid in full by the plaintiff, and was not a party to the action.

3. Under Comp. Laws, § 5118, declaring that all goods, chattels, moneys, and other property, real and personal, not exempt by law, are liable to execution, a mortgagor's equity of redemption is subject to sale on execution.

4. Error in overruling an objection to a question was harmless where the answer was the same as facts testified to by other witnesses without objection.

5. Comp. Laws, § 5105, declares that the clerk shall docket a judgment by entering in the judgment docket the names of the judgment debtor of the party in whose favor it was rendered, the sum recovered, the date of judgment, the day, year, hour, and minute that the judgment was docketed in his office, the page in the judgment book where the sum is entered, and the name of the court rendering the judgment. *Held,* that where a judgment docketed showed the name of a judgment creditor and debtor, the time when the judgment was docketed, and date when execution issued, and it appeared from the heading it was a judgment docket of the court rendering the judgment, but the hour and minute in which judgment was entered, the hour and minute in which the docket was made, the book and page where the entry of judgment appeared, and the title of the court were omitted, the judgment docket was not void as to subsequent purchasers or incumbrancers, as there was sufficient evidence to induce a cautious man to make a full investigation.

6. Where plaintiff brought suit against the purchaser in execution to quiet title, and the purchaser claimed that the transaction between K., plaintiff's father, and grandfather amounted to a mortgage on the land, and that he had secured plaintiff's equity of redemption, it was not error to overrule plaintiff's motion to strike out the evidence of the purchaser as to conversations with K. and her husband after the sale to plaintiff which tended to disparage the title conveyed by her to plaintiff, where it was evident that K. and plaintiff had acted together in an attempt to defraud the creditors.

(Opinion filed August 29, 1900.)

Appeal from circuit court, Bon Homme county. Hon. E. G. SMITH, Judge.

Action by Henry A. Muller against Timothy F. Flavin. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Aikens & Judge*, for appellant.

One who alleges that a deed absolute in form was intended as a mortgage only, is required to make strict proof of the fact, and the evidence must be clear, convincing and satisfactory. Jones on Mortgages, § 335; Jasper v. Hazen, 58 N. W. 454; Perot v. Cooper, 28 Pac. 391; Winston v. Burnell, 24 Pac. 577; Wilson v. Pershall, 129 N. Y. 223; Morris v. Nyswanger, 58 N. W. 800; Fletcher v. Northcross, 32 Pac. 328; Langer v. Meservey, 45 N. W. 732. A person procuring another to purchase land must have either an equitable or legal interest in the land to cause an agreement by the purchaser to convey the land, upon being reimbursed, to constitute a mortgage. Develin on Deeds, §§ 1120 and 1124; Jones on Mortgages, § 268: Hill v. Grant, 46 N. Y. 96; Stephenson v. Thompson, 13 Ill. 186. When any person having a subsequent interest in the premises

and who is not primarily liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. Jones on Mortgages, §§ 876 877; 2 Pom. Eq. Jur. § 794; Everson v. McMillen, 113 N. Y. 293; Averill v. Tyler, 8 N. Y. 44; Betts v. Sims, 53 N. W. 1005; Draper v. Ashley, 62 N. W. 707; Ohmer v. Boyer, 7 So. 663; Gerdinl v. Menage, 43 N. W. 91. The lien of a judgment is subordinate to all prior equities in favor of third persons. Fitzgerald v. Miller, 7 S. D. 61; Valentine v. Siess, 28 All. 892; Pearson v. Davis, 59 N. W. 885; Moore v. Thomas, 36 N. E. 712; Bank v. Fridley, 31 N. E. 62; Hope v. Blair, 19 S. W. 595. The lien of a judgment does not attach to an equitable interest in land. Harmon v. Jones, 45 Am. Dec. 296; Sidoney v. Pratt, 66 Am. St. 101; Terrell v. Preston, 68 Ind. 86; Bank v. Teglie, 68 N. W. 590. A judgment not correctly entered in the docket does not create a lien upon land. Dewey v. Sigg, 13 S. E. 923; Ins. Co. v. Hesser, 77 Ia. 381; Black on Judgments § 404. Declarations by grantor, after the execution of his deed which tend to disparage the title conveyed by his deed are inadmissible against those claiming under him. Jones on Ev. § 242; Bradner on Ev. p. 333; Ballard Law of Real Prop. vol. 3 p. 617; vol. 4 p. 286; Arnegard v. Arnegard, 72 N. W. 797; Vroman v. King, 36 N. Y. 477; Williams v. Williams, 36 N. E. 1053; Ord v. Ord, 34 Pac 83.

*Elliott & Stillwell, French & Orvis* for respondents.

A lien of a judgment attaches to an equitable interest in land. Comp. Laws § 5118; Kennedy v. Fowler, 58 Cal. 373;

LeRoys v. Dunkerly, 54 Cal. 460; McLaughlin v. Alexander, 2 S. D. 226.

CORSON, J.   This is an action to quiet title to a tract of land in Bonhomme county, under section 5449, Comp. Laws. The jury having disagreed, the case was tried by the court upon stipulation of the parties, and, findings and judgment being in favor of the defendant, the plaintiff appeals.

The title of the plaintiff is based upon a patent of the United States issued to William Muller, Sr , a deed from Muller, Sr., to Mary Kirk, and a deed from Mary Kirk to the plaintiff. The defendant's title is based upon a sale of the property under an execution issued in an action in favor of the defendant, Flavin, and against William Muller, Jr., the father of the plaintiff.   It is claimed on the part of the defendant that the transaction between Muller, Sr., Muller, Jr., and Mary Kirk was intended as a mortgage to secure a loan of $1,200 made by said Mary Kirk to said Muller, Jr., and which Muller. Jr., assumed to pay, and that the title to the property, upon such payment, was to vest in him; and that by virtue of the sale under the execution issued under his judgment the defendant acquired the equity of redemption of said Muller, Jr., in the property.   The court found, as claimed by the defendant, that the transaction between Muller, Sr., Muller, Jr., and Mary Kirk was intended as a mortgage, with the right of redemption in Muller, Jr., and that under and by virtue of the sale of the property under the judgment recovered against Muller, Jr., the equity of redemption in the property became vested in the defendant, Flavin, and that he was entitled to judgment quieting the title to the property in him, and such judgment was

accordingly entered. The appellant contends that the finding of the court that the transaction between Muller, Sr., Muller, Jr., and Mary Kirk constituted a mortgage is not supported by the evidence. The principal question in this case, therefore, is, was the court justified in finding that the transaction between Muller, Sr., Muller, Jr., and Mary Kirk constituted a mortgage? It appears from the undisputed facts that in March, 1889, Muller, Sr., who was the owner of the tract of land in controversy, executed a warranty deed to the same to Mary Kirk, who, at the time of the execution of the deed, paid Muller, Sr., $200, and subsequently on the 8th of April, 1889, caused to be remitted to him at Davenport, Iowa, $1,000 by draft. The deed from Muller, Sr., to Mary Kirk was deposited in the bank to be delivered to her upon the payment of the $1,000 balance On May 4, 1889, Mary and James Kirk and Muller, Jr., executed a written instrument, the material parts of which are as follows: ''Bond for deed. This indenture, made this 4th day of May, A. D. 1889, between Mrs. Mary Kirk, of Bonhomme county, territory of Dakota, of the first part, and William Muller, Jr., of the second part, of Bonhomme county, territory of Dakota, witnesseth: That the party of the first part, for and in consideration of one dollar, now received by the said party of the first part, and upon the express condition, which is hereby declared a condition precedent, that the said party of the second part, his heirs, executors, administrators, or assigns, shall well and faithfully perform the cove nants hereinafter mentioned, do hereby, for herself, her heirs, executors, administrators, and assigns, covenant and agree to deliver to said party of the second part a deed in fee simple for all that certain piece or parcel of land situate, lying, and

being in the county of Bonhomme and territory of Dakota, known and described as follows, to wit:   *   *   *   And the said party of the second part does hereby, for himself and his heirs, executors, administrators, and assigns, covenant and agree to and with the said party of the first part, her heirs, executors, or assigns, as follows, to wit:   First.   To pay the said party of the first part, her heirs, executors, administrators, or assigns, the further sum of twelve hundred dollars, as follows: The sum of twelve hundred dollars on the 4th day of May, 1894, together with interest, payable annually on the 8th day of April each year, at the rate of nine per centum per annum until due, and nine per centum per annum interest, payable annually, on all sums, whether principal or interest, after due; said payments to be made at Springfield, D. T.   Secondly. Said party of the second part to pay all taxes and assessments on said land for the year 1889 and subsequent years, and to repay them to said party of the first part if she shall have paid them, with nine per centum interest per annum for each year's taxes, as damages, until paid."

There was the usual condition in the instrument that Muller should give up the possession at the end of the five years if the money specified therein had not been paid, etc.   It further appears that about the time Muller, Sr., executed the deed to Mary Kirk, Muller, Jr., took possession of the property, and remained in possession until about February, 1896. when the plaintiff claims to have purchased the property from Mary Kirk. Muller, Jr., paid no rent for the property, but paid the interest stipulated in the instrument, which we shall denominate hereafter a "bond for deed," up to May 4, 1894.   In January, 1896, Muller, Jr., executed to Mary Kirk a release of his inter-

est in said property, and on February 7th of the same year Mary Kirk declared the bond for deed forfeited, and the quit-claim deed or release from Muller, Jr., was delivered to her, and she thereupon executed a deed to the same premises to Henry Muller, the plaintiff herein, in consideration of the sum of $1,415, part of which was paid at the time, and the balance secured by mortgage upon the property. In December, 1895, and prior to the last transaction referred to between the plaintiff and Mary Kirk. the defendant caused to be issued an execution upon a judgment recovered by him against Muller, Jr., under and by virtue of which the interest of Muller, Jr., in the property was sold, and bid in by the defendant, Flavin, for the sum of $508; that being the amount of his judgment, costs, etc. The court found the value of the property in March, 1889, when the same was conveyed by Muller, Sr., to to Mary Kirk, to have been at least $2,500, and that at the time of the execution of the deed from Mary Kirk to the plaintiff in February, 1896, the value was about the same. It further appears from the evidence that subsequent to May 4, 1894. Muller, Jr., informed James Kirk, the husband of Mary Kirk, who transacted most of the business as her agent, that he would not be able to redeem the property, and in Janurary, 1896, requested said James Kirk to transfer the property to his son, the plaintiff herein, and which, it seems resulted in the transaction of February 7th between Mary Kirk and the plaintiff, as above stated. It further appears that the sum of $1,415, which the plaintiff agreed to pay for the property, was the amount that was due at that time from Muller, Jr., under the stipulation in the bond for deed. It is contended on the part of the appellant that the evidence shows that Mary Kirk

purchased the property from Muller, Sr., for $1,200, and that that was an independent transaction; that subsequently she and her husband agreed with Muller, Jr., to sell him the property for the sum of $1,200, and that that was an independent transaction, having no connection with the sale of the property by Muller, Sr. The appellant further contends that Mary Kirk, in February, 1896, declared said bond forfeited, and sold said premises to the plaintiff; and that, as before stated, the evidence was insufficient to justify the court in finding that the transaction was a mortgage. It is contended on the part of the respondent that it affirmatively appears from the bond for deed that the same was given in the nature of a defeasance by Mary Kirk to Muller, Jr., and was intimately connected with, and in fact constituted a part of, the transaction between Muller, Sr., and Mary Kirk, as is shown by the fact that Muller, Jr., stipulated to pay the $1.200 absolutely, with interest at 9 per cent. per annum from April 8, 1889, until May 4, 1894, and that, while the bond for deed bore date of May 4th, it was stipulated the interest should be paid from April 8th, the time when the last payment of $1,000 was made to Muller, Sr.; and that the indorsements on the back of the bond show that the interest was paid as stipulated in the bond for the period of five years. The respondent further contends that the fact that the amount paid to Muller, Sr., for the property was less than one-half of its value as found by the court, and the amount for which Mary Kirk sold the property to the plaintiff was only a little more than one-half of its value, tends strongly to prove that the transaction was intended as a mortgage. Respondent further contends that the fact that Muller, Jr., entered into possesssion

of the property at the time the deed was executed by Muller, Sr., in the spring of 1889, and remained in possession until the same was transferred to the plaintiff in February, 1896, without the payment of any rent therefor, also tends very strongly to prove that the transaction between the parties was intended as a mortgage, and that the fact that Muller, Jr.. notified Mary Kirk, through her husband, James Kirk, that he could not redeem the property, and that the same was, upon his request, conveyed to his son, Henry Muller, for the amount due upon the bond for deed, also tends strongly to prove that the transaction was a mortgage.

Mary Kirk testifies that she had no conversation with Muller, Sr., in regard to the purchase of the land until the day the deed was executed to her. She further says that upon the execution of that deed Muller, Jr., entered into and continued in possession of the land. She was then asked, "What rent did Mr. Muller, Jr., pay you, if any?" to which she answered, "He was to pay the whole in five years, and then it was to be his, if he did that; and, if not, it was to be mine." In regard to the transaction between herself and the plaintiff, she was asked. "You say the amount Henry [the plaintiff] paid you for this warranty deed was the amount due upon the former bond for deed?" Her answer was, "It might be; it is most likely; but then I had a right to sell it for what I pleased, all the same" James Kirk, on cross-examination, says: "Mr. Muller, Jr., spoke to me about it first in January. Mr. Muller said that he did not know that he could redeem it, and we had better sell it, but he wished we would sell it to Henry. He spoke to me a long time before that, in the summer, I think. He said along time before that that he could not redeem it, and

he wanted us to let Henry have it." It further appears from the testimony of James and Mary Kirk that they had made no examination of the land before the purchase of it from Muller. Sr., but that they knew the land, having passed by it. There was testimony on the part of the respondent, Flavin, tending to prove certain admissions made by both James and Mary Kirk. This evidence was contradicted to a certain extent on the part of James and Mary Kirk, but, as these witnesses were before the court, and it had an opportunity to observe their manner of testifying, it could better judge of the credibility of the witnesses and the weight to be given their respective statements than this court. Undoubtedly, as stated by counsel for the appellant, the evidence tending to show that a deed is intended as a mortgage must be clear and satisfactory; but it is not necessary that the evidence should be absolutely conclusive, or that the transaction should be proven by direct evidence. It is sufficient if the court is satisfied from the documentary evidence connected with the transaction that it was intended that the transaction should constitute a mortgage. While the evidence in the case at bar cannot be said to be conclusive, we are of the opinion that it very strongly preponderates in favor of the respondent. The transaction between Mary and James Kirk and Muller, Jr., seems to us to be intimately connected with the deed from Muller, Sr., to Mary Kirk. It appears from the finding of the court—and this finding seems to be very fully sustained by the evidence—that the value of the property at the time it was conveyed by Muller, Sr., to Mary Kirk was $2,500. It seems very improbable, therefore, that Muller, Sr., should sell the property to any one but his son for less than half of its value, and it seems equally improbable

that Mary Kirk should have immediately given a bond for a deed to Muller, Jr., for the property, payable in five years, for the precise amount for which she claims to have purchased it from Muller, Sr., and for less than half of its value. The fact that the interest stipulated in the bond was to be paid from the day when the last payment was made to Muller, Sr., upon the property, instead of May 4th, the date of the bond, seems incapable of explanation, unless the bond and deed were a part of one transaction. The terms of the bond for deed are somewhat unusual, in that Muller, Jr., binds himself to pay the sum of $1,200 at the end of five years, with interest at the rate of 9 per cent. per annum, which, it seems, he did pay up to May 4, 1894, if the instrument is to be regarded as a bond, and not as a defeasance. It would seem that Muller, Jr., in speaking of his inability to pay the amount due, says he will not be able to redeem the property. This is a singular expression to be used in connection with an ordinary bond for the sale of land. The fact, also, that Mary Kirk conveyed the property to this plaintiff for the amount due upon this bond, being for a sum much less than the value of the property, can only be explained upon the theory that they regarded this transaction as a mortgage. Again, why should it have been necessary that Muller, Jr., should quit-claim his interest in the property if he had no interest in the equity of redemption, and the transaction was not intended as a mortgage? The whole transaction impresses us, as it did the court below, as being a loan of money made virtually to Muller, Jr., upon this property, and that the various instruments executed by the parties were executed for the purpose of securing this loan. We are of the opinion that the transaction was clearly intended to be a mort-

gage, and that the various transactions are too transparent to deceive a court of equity. We are of the opinion, therefore, that the court below was fully justified in finding that the transaction between these parties constituted a mortgage, and that the equity of redemption was vested in Muller, Jr., and could be and was properly sold under the execution issued on the judgment recovered by the defendant against Muller, Jr. We have not deemed it necessary to review at any length the testimony of James and Mary Kirk or of the respondent, as, in our view of the case, such a review would serve no useful pur- pose.

It is contended on the part of the appellant that a person procuring another to purchase land must have either an equit- able or legal interest in the land to cause an agreement by the purchaser to reconvey the land upon being reimbursed to con- stitute a mortgage, and that in this case the evidence does not show that Muller, Jr., had any interest in the land, either legal or equitable, prior to the giving of the bond for deed, and nei- ther was the relation of the debtor and creditor created by the bond, for by its terms the liability of Muller, Jr., was limited upon the forfeiture to the money paid and accrued interest to the day of forfeiture. We cannot agree with counsel in this contention. Where the transaction is a continuous one, and the conveyance is made by the grantor upon the express under- standing that a reconveyance shall be made to a third party upon the repayment of the amount advanced, with interest, and that third party stipulates to pay the amount absolutely, the transaction will be held in a court of equity as a mortgage. It is the theory of respondents in this case that there was an agree- ment or arrangement between Muller, Sr., Muller, Jr., and

Mary Kirk that the money was in fact to be advanced to Muller, Jr., and that the deed was to be made by Muller, Sr., to Mary Kirk with the understanding that, upon repayment of the same, the property should be redeeded to Muller, Jr., and that Muller, Jr., should bind himself to repay the amount; and this seems to have been the view taken by the court below. In such a case the transaction would constitute a mortgage. This was so held in Pardee v. Treat, 82 N. Y. 385. In that case, the title to the land being in one Gaylord, he deeded the same, his wife joining with him, to the defendants in that case as security for certain money, the defendants agreeing to reconvey the same to his wife upon the repayment by her of the sum secured by the deed. The court of appeals of New York in its opinion says: "If the contract had provided for a reconveyance of the land to Gaylord, instead of to his wife, there would be no reasonable doubt that the transaction would in equity be deemed a mortgage. [Citing cases.] But it is claimed that the legal title passed to the defendants by the deed. We think this must be conceded. It was necessary that the title should be vested in the defendants to enable them to convey to Mrs. Gaylord according to the terms of the contract, but the fact that the conveyance vests the legal title in the land in the grantee is not decisive upon the question whether it is an equitable mortgage. * * * It is also claimed that, to constitute a mortgage, the defeasance must be in favor of the grantor himself, and not of any third person. * * * If the mortgagee were to covenant in the mortgage deed that upon payment of the mortgage money he would reconvey to the mortgagor, it would clearly be a mortgage. If, instead of that he were to covenant that he would convey to such other person as the mortgagor should

appoint, it would not be the less a mortgage. [Citing cases.] In this case the giving of the contract to Mrs. Gaylord was required by Gaylord for his own purpose as a part of the transaction. She was, in substance, his appointee to take the title." To constitute the transaction a mortgage, an indebtedness must exist, or there must be a loan of money, which either the grantor, or some one in his behalf, must covenant to pay. If there is no debt, there is no mortgage  Henley v. Hotaling, 41 Cal. 22. In the case at bar it will be observed that Muller, Jr., does bind himself to pay the debt and to pay interest thereon for the period of five years. At the termination of this agreement Mary Kirk had an option to bring an action against Muller, Jr., for the amount due, after tendering to him a deed, and making a proper demand, or she could proceed to foreclose Muller, Jr.'s, equity of redemption, holding him personally liable for any deficiency upon a sale under the foreclosure proceedings. Henley v. Hotaling, *supra.* We are of the opinion, therefore, that the principle of law invoked by the appellant is not applicable to this case.

It is contended on the part of the appellant that the judgment in this case is erroneous for the reason that it is not equitable, and is against law, in that, if the deed from Muller, Sr,, to Mary Kirk was a mortgage, respondent could acquire no greater interest by the sale under his judgment than that Muller, Jr., had at the time of the sale. It is further claimed that the contract provides that Muller, Jr., or his assignee, may receive a conveyance from Mary Kirk by paying the sum of $1,200 and interest, and neither Muller Jr., nor .his assignee ever tendered the money or demanded a conveyance before the contract expired, and in

any manner attempted to comply with the terms of the contract, but forfeited and abandoned the same before the pretended levy was made upon the land. If the bond for deed was in fact intended as a defeasance, and not strictly a bond for deed in the ordinary sense in which the term is used, then Muller, Jr. 's interest in the property could only be terminated by a foreclosure. Until his equity of redemption was cut off by such a foreclosure, he would have the usual rights pertaining to the owner of an equity of redemption. If the transaction was intended to be a mortgage for the security of the $1,200 advanced to Muller, Sr., then the transaction must be treated as a mortgage for all purposes, and Muller, Jr., must be regarded in equity as the owner of the equity of redemption. In other words, these various proceedings taken, though tending to obscure and complicate the transaction, will be set aside by a court of equity, and the case treated precisely as though Muller, Jr., had owned the property, and given a mortgage upon the same to Mary Kirk to secure the payment of the loan of $1,200. Courts of equity disregard to a great extent, in investigating such a transaction, the forms and proceedings which have been taken by the parties tending to cover up the real transaction, and seek to ascertain the real intention of the parties in making such a transaction.

It is further contended by the appellant, that if the deed from Muller, Sr., was in fact intended as a mortgage, appellant should have been subrogated to the rights of Mary Kirk, he having become an equitable assignee of Mary Kirk's interest. But the difficulty with this proposition is that Mary Kirk had not been paid in full for this property at the time of the trial, and she is not a party to this action. The court could, not,

therefore, have made any decree which would affect her interest. Whatever the rights of the respective parties may be, they should be determined in some proceeding to which Mary Kirk is made a party.   Possibly, had it appeared that the appellant had paid Mary Kirk in full for the property he purchased of her, the contention of counsel would be entitled to consideration, but, as the case now stands, it certainly would not have been proper for the trial court to make any decree in the case affecting the rights of Mary Kirk.

The appellant further contends that the lien of a judgment is subordinate to all prior equities in favor of third persons. Section 5118, Comp. Laws, provides as follows:   "All goods, chattels, moneys and other property, both real and personal, not exempt by law, and all property and rights of property, seized and held under attachment in the action, are liable to execution.   Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in real or personal property, and all other property not capable of manual delivery, shall be liable to be taken on execution and sold as hereinafter provided."   It will be noticed that by the terms of the section all property, both real and personal, or any interest therein, of the judgment debtor, are liable to be taken on execution and sold.   Under a similar statute in California it has been held by the supreme court of that state that the term "land" embraces all titles, legal or equitable, perfect or imperfect, including such rights as lie in contract, those which are executory as well as those which are executed, and that any interest, therefore, in the land, legal or equitable, is subject to seizure and sale under execution.   Fish v. Fowlie, 58 Cal. 373; Le Roy v.

Dunkerly, 54 Cal. 452. This seems to be the proper construction that should be given to the broad and comprehensive terms of our statute. By the sale, therefore, of the interest of Muller Jr., his equitable interest in the property passed to the purchaser.

The appellant further contends that the court erred in overruling the plaintiff's objection to the following question on cross-examination: "What about the sale of the land?" This was a question asked of James Kirk when a witness on the stand, called by the plaintiff to prove the execution of the deed from Muller, Sr., to Mary Kirk. The answer to the question does not seem to us to be very important, and, even if the court erred in its ruling, it would not constitute reversible error. But, in any event, the error, if error it was, was without prejudice, since the same facts were testified to by other witnesses without objection.

The appellant further contends that the court erred in overruling the plaintinff's objection to the introduction in evidence of entry No. 113, on page 117 in the book referred to as the "Judgment Docket," for the reason that the entry made in the judgment docket was not sufficient to create a lien upon the property of Muller, Jr. It does not affirmatively appear from the record that the objection was overruled. At the time the objection was made the court admitted the record subject to the objection. What ruling he subsequently made upon the question, as before stated, does not appear from the record. But assuming, for the purpose of this decision, that the court did finally overrule the objection, and consider the judgment docket as in evidence, we think that the court committed no error in so ruling. The objections made to the judgment docket are

that it omits to state the book and page in which the judgment was entered, or that any judgment had in fact been entered; that it did not show that it was a docket of any court of record, and did not show that it was a docket kept within this state. The judgment docket entries are as follows: "Judgment Docket, Bonhomme County, Dakota. Judgment debtor: William Muller, Jr. Judgment creditor: T. F. Flavin. Attorney for judgment creditor: J. D. Elliott. Month, day, year: May 10, 1895. Amount of judgment: $379.65. Month, day, year: June 4, 1895. Remarks: Execution issued, 12,—26—1895."

Section 5105, Comp. Laws, provides: "The clerk shall docket the judgment by entering alphabetically in the judgment docket the names of the judgment debtor or debtors; the names of the party or parties in whose favor the judgment was rendered; the sum recovered or directed to be paid, in figures; the date of the judgment; the year, day, hour and minute when the judgment roll or transcript was filed; the year, day, hour and minute when the judgment was docketed in his office, and the page in the judgment book where the same is entered; the name of the court in which the judgment was recovered; the name of the attorney or attorneys for the party recovering the judgment, and, if there are two or more judgment debtors, such entry must be repeated under the initial letter of the surname of each." While these provisions of the statute must be substantially complied with, a failure to literally comply with them does not render the judgment docket void. Black, in his work on Judgments (section 406), says: "The common occurrence of mistakes in the docketing and indexing of judgments, such as misspelling of names and other irregularities, has frequently led the courts to pass upon the

degree of certainty required in these entries. The purport of the decisions appears to be that the sufficient degree of accuracy is attained if an intending purchaser (for example) exercising a reasonable degree of care and a reasonable amount of intelligence in making a search could not fail to be apprised of the existence and character of the judgment. At the same time 'a subsequent purchaser is affected with such notice as the index entries afford, and, if they are of such a character as would induce a cautious and prudent man to make an examination, he must make such investigation, or the failure to do so will be at his peril.'" Metz v. Bank, 7 Neb. 165. We think in this passage the correct rule is stated. In the case at bar the judgment docket shows the name of the judgment creditor, the judgment debtor, name of the attorney, year, month, and day when the judgment was docketed, and under "Remarks" the date when execution issued. A party, therefore, searching the records to find whether or not there was any judgment against Muller, Jr., would find sufficient to induce a prudent and cautious man to make a full investigation of the records in that case, and in doing so he could not fail to find the judgment properly entered in the judgment book. It would, we think, be giving too strict a construction to the statute to hold that the failure of the clerk to comply literally with the letter of the statute should render the judgment docket void as to subsequent purchasers or incumbrancers. While, therefore, it is the duty of the clerk to follow the directions of the statute, and see that the judgment docket is made in accordance with its provisions, his failure to thus literally comply with the provisions of the statute should not be held to prejudice the rights of the judgment creditor where the entries are such as to

apprise third parties of the existence and character of the judgment, and such as would induce a prudent and cautious man to make an examination of the proceedings. See, also, Freem. Judgm. § 343 et seq. It will be noticed that the hour and minute at which the judgment was entered, the hour and minute at which the docket entry was made, the book and page where the entry of the judgment appears, and the title of the court in which the judgment was recovered, are omitted. The hour and minute at which the entries are made might, in some cases, become very important, but in the case at bar the omission of the hour and minute at which the entries were made would not render the docket entry fatally defective. The designation of the book and page where the judgment is entered seems to be designed to aid parties in looking up the judgment entry, but does not seem to be absolutely essential to the validity of the judgment docket. The failure to insert the name of the court cannot be regarded as an omission of an essential part of the judgment docket entry, as it appears from the heading that it was a judgment docket of Bonhomme county, Dak. The essential requirements of the statute seem to have been complied with. The names of the judgment debtor and judgment creditor are given in full; the month, day, and year when the judgment was entered, the amount of the judgment, the month, day, and year when the docket entry was made, and the date when execution was issued. We are of the opinion, therefore, that the court committed no error in overruling the objection to the judgment docket entries, and that they substantially complied with the requirements of the statute, or, at least, were sufficient to impart constructive notice of the judgment and the lien of the same.

It is further contended that the court erred in overruling the plaintiff's objections to the introduction in evidence of the various exhibits pertaining to the judgment, execution, and sale, for the reason that Muller, Jr., had no interest in the land in controversy subject to levy and sale at the time of the rendition of the judgment in favor of Flavin, or at any time thereafter. These objections have already been sufficiently considered, as we hold that, if the transaction was a mortgage, Muller, Jr., did have an equitable interest in the equity of redemption that was subject to sale on execution.

It is further contended that the court erred in overruling appellant's motion to strike out the evidence of the witness Flavin as to conversations with James and Mary Kirk, for the reason that the conversations occurred after the sale made by Mary Kirk to the plaintiff, and tended to disparage the title conveyed by the deed from her to the plaintiff. Undoubtedly, the rule is correctly stated by the appellant, as applicable to ordinary cases, that "declarations by the grantor after the execution of his deed, which tend to disparage the title conveyed by his deed, are inadmissible against those claiming under him," and that the rule applies to the statements of James Kirk, the agent of Mary Kirk. But there are exceptions to this rule. When it is shown that the grantor and grantee are acting together in an attempt to defraud creditors, then such evidence is admissible. Loos v. Wilkinson, 110 N. Y. 195. 18 N. E. 99, 1 L. R. A. 250. In the case at bar it clearly appears that the plaintiff had full knowledge of the transaction between his father, Muller, Jr., and Mary Kirk, as he drew the quitclaim deed from Muller, Jr., to Mary Kirk, and the declaration of forfeiture of the bond for deed, and was

during a portion of the time between March, 1889, and the time of his purchase an inmate of his father's home. It is quite clear, therefore, that in taking the deed from Mary Kirk he was acting in connection with her in an attempt to cut off the claim of the defendant, Flavin, to the property under his execution sale. But, be this as it may, we are of the opinion that, if the court committed error in admitting evidence of the declarations of Mary and James Kirk, it was error without prejudice, as in our view of the case, there was ample evidence to sustain the findings of the court independently of this evidence. The appellate court will not reverse a case tried by the court below without a jury, where incompetent evidence has been admitted, if there is sufficient legal evidence, independently of the incompetent evidence, to sustain the findings of the court.

It is further contended on the part of the appellant that the objection to the following question propounded to the appellant was improperly sustained: "Q. I ask you whether or not your father has any interest in this land, or had after this deal was made on the 7th of February, 1896." This ruling was clearly correct, as the question called for an opinion of the witness upon the main question then being tried by the court, viz. did Muller, Jr., have any salable interest in the property?

There are other assignments of error as to the admission of evidence, which have been considered by this court, but which, in view of the length of this opinion, we do not deem it necessaay to discuss, as we are satisfied the rulings of the court were correct, or the errors, if any, are not of sufficient importance to require a reversal of the case. We have not deemed it necessary to discuss any of the questions presented

by counsel for the appellant as to the rights of Mary Kirk and the plaintiff in the property if the decision is affirmed. These are matters to be considered in a proper action to which Mary Kirk and the plaintiff are parties. Finding no error in the record, the judgment of the court below is affirmed.