#25795-rev & rem-SLZ

**2011 S.D. 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SOUTH DAKOTA PUBLIC
ASSURANCE ALLIANCE,                              Plaintiff and Appellee,

    v.

AURORA COUNTY, a Subdivision
of the State of South Dakota,                     Defendant and Appellant,

    and

E.L. THOMPSON FARMS, LTD.,                        Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SEAN M. O'BRIEN
Judge

* * * *

ROY A. WISE
KIMBERLY A. DORSETT of
Richardson, Wyly, Wise, Sauck,
 & Hieb, LLP
Aberdeen, South Dakota                            Attorneys for plaintiff and
                                                  appellee SD Public Assurance
                                                  Alliance.

* * * *

                                                  CONSIDERED ON BRIEFS
                                                  ON AUGUST 11, 2011

                                                  OPINION FILED **08/31/11**

ROGER A. TELLINGHUISEN
BRAD P. GORDON of
Tellinghuisen & Gordon, P.C.
Spearfish, South Dakota

Attorneys for defendant
and appellant, Aurora County.

#25795

ZINTER, Justice

[¶1.] In 2001, the South Dakota Public Assurance Alliance (SDPAA), a local government risk pool, negotiated with Aurora County (County) to provide what is essentially insurance coverage.[1] During negotiations, the two entities had a number of communications concerning coverage for zoning matters. County alleges that in the communications County disclosed a potential claim involving a pre-existing zoning dispute between County and a local dairy farm, E.L. Thompson Farms, Ltd. (Thompson Farms). In 2002, after coverage was finalized, Thompson Farms sued County over the zoning dispute. County defended but was found liable for damages that are yet to be determined. SDPAA then filed this action, seeking a declaration that it did not have a duty to defend or indemnify.[2] SDPAA's coverage defenses were based on three alternative theories: (1) that County failed to provide timely notice of the claim and SDPAA was prejudiced by the delay; (2) that County failed to disclose material facts relating to the claim; and (3) that the Thompson

---

1.  "Technically, [risk pool coverage] is not insurance, but a liability, self-insurance pool. . . . However, coverage concepts are similar to insurance so we apply the same general principles." *S.D. Pub. Entity Pool for Liability v. Winger*, 1997 S.D. 77, ¶ 8 n.5, 566 N.W.2d 125, 128 n.5.

2.  SDPAA's amended complaint requests an order declaring that "SDPAA has no obligation to defend the underlying lawsuit or to indemnify County against any sums which may be adjudicated against it pursuant to that lawsuit." County indicates in its brief that it has not asserted and does not intend to assert a claim for the expense incurred in defending the liability determination. The trial court's order, however, only states that SDPAA had no duty or obligation to defend in the Thompson Farms lawsuit; there is no mention of the duty to indemnify. In light of the inconsistencies but lack of material distinction for purposes of this action, our reference to either duty includes the other.

-1-

Farms claim was a "known loss" or "loss in progress" at the time coverage was negotiated. In a jury trial on these coverage defenses, the circuit court admitted a letter signed by County confirming its request for retroactive coverage and disclaiming knowledge of any pre-existing incidents that could result in a loss. At the same time, the court excluded as parol evidence the parties' pre-contract communications regarding coverage for zoning issues, including communications that could be interpreted as having disclosed the Thompson Farms zoning dispute. The jury found for SDPAA on all three theories. We reverse and remand for a new trial because the excluded coverage communications were not parol evidence offered to change the terms of the contract.

*Facts and Procedural History*

[¶2.]        County was negotiating for liability and property insurance in late 2000 and early 2001. In December 2000, Aurora County Auditor Susan Urban invited SDPAA to make a presentation to the Aurora County Commissioners.

[¶3.]        American Risk Pooling Consultants, Inc. (ARPCO) was the administrator and manager for SDPAA, handling marketing as well as underwriting, risk management, and risk assessment. Through a subcontract, Hagan Benefits, Inc. (Hagan) also handled marketing and some underwriting responsibilities for SDPAA. Ladene Bachtell, on behalf of Hagan and SDPAA, made the presentation to the County Commissioners on February 6, 2001. During February and March, various memos, faxes, letters, and oral communications were exchanged between County and Bachtell, as well as between Bachtell and her

assistant Joanne Gries.  Some of the communications involved discussions regarding coverage for zoning disputes and "inverse condemnation."

[¶4.]	The Aurora County Commission accepted a quote from SDPAA and paid the premium on February 28, 2001.  The principal coverage documents were the Legal Defense and Claim Payment Agreement (Agreement) and the Intergovernmental Contract for the SDPAA (Contract), but other documents were involved.  Urban sent a letter to Bachtell explaining that County did not have all the documents that Bachtell requested the County sign and return.  Bachtell sent a responsive letter to Urban on March 2, 2001, acknowledging receipt of the premium check.  Bachtell also enclosed the Contract, as well as a property rider, a resolution, and an updated statement of values.  All required documents were signed and returned to SDPAA.

[¶5.]	On March 6, 2001, Bachtell sent Urban another letter (a cover letter) regarding County's understanding of the retroactive coverage.  The cover letter stated in part:

> Enclosed is a letter regarding the retroactive coverage that the County has requested.  This letter is verification that the County understands that this coverage applies to unknown, unreported claims only.  Please have this letter sign [sic] and returned to our office as soon as possible.

County Commissioner Delayne Persson signed the enclosed letter (hereinafter referred to as the March 6 Letter).  It stated:

> We are requesting Retroactive Coverage to 3/1/91 for Officials and Law Enforcement Liability.
> We understand that this coverage applies to UNKOWN, UNREPORTED losses only.  We are not aware of any incidents

that may result in a loss under this area of coverage prior to 3/1/01.

[¶6.] County was, however, aware of an incident that could have led to a loss as a result of the pre-existing zoning dispute with Thompson Farms. A 1998 County zoning ordinance placed restrictions on farming operations, including limitations on farming operations involving more than 1,500 "animal units." Before enactment of the zoning ordinance, Thompson Farms had started the first phase of an expansion of its dairy operation. Thompson Farms asked County to "grandfather in" its dairy operation. Sometime after the ordinance went into effect, Thompson Farms was ready to move into the next phase of its planned expansion but was limited by the new ordinance. On January 22, 2001, counsel for Thompson Farms sent Aurora County State's Attorney John Steele a letter indicating that Thompson Farms was contemplating a suit against County alleging "a taking and damages" as a result of the zoning ordinance. The letter suggested a meeting with the County's Commissioners to talk about alternatives to litigation. Steele shared this letter with the County Commissioners and met with them in executive session to discuss the threatened litigation.

[¶7.] On March 22, 2001, Thompson Farms applied for a building permit to build another barn in order to "fully utilize" its facility. Thompson Farms also asked County for a variance to exceed the 1,500 animal-unit cap. County denied the building permit and variance. Thompson Farms unsuccessfully appealed the denial to circuit court.

[¶8.]      In April 2002, Thompson Farms filed suit against County as a result of its inability to expand its operation under the new ordinance. A trial on liability was held in May 2008, Judge Bruce Anderson presiding. In February 2009, Judge Anderson ruled that County's zoning actions violated Thompson Farms' right to substantive due process and constituted a regulatory taking of Thompson Farms' property without just compensation. The court found that the date of the taking was March 22, 2001. The court stayed a jury trial on damages until this declaratory action was resolved.

[¶9.]      In March 2009, County gave SDPAA notice of Thompson Farms' claim. SDPAA declined to defend or indemnify, asserting that "County failed to notify [SDPAA] 'as soon as practicable' of a situation that 'may result in a claim'[;] that there was no reasonable excuse for the County's failure to give timely notice; and that [SDPAA] [was] prejudiced by this late notice." SDPAA then filed this action for declaratory judgment regarding its duty to defend and indemnify.

[¶10.]      Before trial on this declaratory action, SDPAA moved to prevent County from eliciting any testimony that would tend to contradict the March 6 Letter disclaiming knowledge of any pre-existing incidents that could result in a loss. SDPAA contended that the March 6 Letter was an endorsement to the coverage documents and any pre-contract evidence contradicting the letter would be inadmissible parol evidence. County objected, asserting that the March 6 Letter was itself inadmissible parol evidence and that the letter violated the integration clauses in the coverage documents. The circuit court, Judge Sean O'Brien, ruled that neither the parol evidence rule nor the integration clauses precluded admission

of the March 6 Letter. On the other hand, the court ruled that the parol evidence

rule prohibited County from introducing the other coverage communications

suggesting that County disclosed the Thompson Farms dispute and that SDPAA

contemplated coverage. The excluded communications included:

- Testimony by two County Commissioners that they specifically talked with Bachtell about the Thompson Farms' situation
- A note to the file by Gries dated February 20, 2001, stating "Susan [Urban] and one of the commissioners called . . . they [ ] had questions regarding liability for their zoning commission. Please call in the morning." An arrow from the word "questions" was drawn to handwritten words "inverse condemnation"
- A note to the file by Gries dated February 22, 2001, commenting in part:
  > I got a better explanation of the claim from [Urban] and faxed a scenario to Laurie [Eikenberry, employee at ARPCO], who ran it by [Baltasar Capote, an underwriter at ARPCO] and the claims manager – they both agreed that our policy would cover this claim. I also told Susan [Urban] this. She was pleased! . . .
- A February 22, 2001, fax from Gries to Laurie at ARPCO reciting a zoning situation strikingly similar in many respects to the events involving the Thompson Farms dispute. The note went on to state that:
  > The finance officer explained to me that their current coverage did not provide coverage for "inverse condemnation" (whatever that means!), but they are going to cover it under the E&O coverage for the zoning commission. They just want to be sure something like this would be covered under the SDPAA if it should come up again.[3]

[¶11.]    The jury found in favor of SDPAA on all three of its coverage defenses,

and the court entered a declaratory judgment ordering that SDPAA was under no

duty to defend County in the Thompson Farms lawsuit. The court determined that

---

3.    Other excluded evidence included: an invoice from Hagan to Urban explaining that coverage provided to County was bound on February 27, 2001; a clean copy of the invoice sent to Urban, stamped as received on March 2, 2001; a copy of the premium check from County to Hagan dated February 28, 2001; and, a letter Urban sent with the premium check to Bachtell, dated February 28, 2001, advising that she had not received all the documents to sign, including the Intergovernmental Contract.

there was no coverage available because: (1) County failed to provide timely notice of the Thompson Farms zoning dispute, and SDPAA was prejudiced by the delay in notice; (2) County failed to disclose material facts relating to the Thompson Farms dispute, entitling SDPAA to void the Contract and Agreement and relieve SDPAA of any obligation thereunder as it related to the Thompson Farms claim; and (3) the "Contract and the Agreement should be reformed to exclude the Thompson Farms' claim as a 'known loss' or a 'loss in progress.'"

[¶12.]    On appeal, we consider the following issues:

  1. Whether the circuit court erred in admitting the March 6 Letter.

  2. Whether the circuit court erred in excluding evidence of the coverage communications between County and SDPAA or its agents.

*March 6 Letter*

[¶13.]    County asserts that admission of the March 6 Letter violated the parol evidence rule and the integration clauses of the coverage documents. SDPAA responds that the March 6 Letter was not barred by the parol evidence rule or the integration clauses because it was intended to be a part of the coverage documents. The circuit court agreed with SDPAA. The court admitted the March 6 Letter, concluding that it was an endorsement to the agreement and therefore a part of the coverage documents. We disagree, but conclude the circuit court did not err in admitting the letter.

[¶14.]    We acknowledge SDPAA's argument that writings executed together, even if not contemporaneously, may be interpreted as part of the same contract.

> All writings that are executed together as part of a single transaction are to be interpreted together. We have recognized this rule, noting that: "[W]hen two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as one contract." Moreover, it is not critical whether the documents were executed at exactly the same time or whether the parties to each agreement were identical.

*Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D. 1990) (internal citations and emphasis omitted) (analyzing documents executed in sale of business).

[¶15.]        But the March 6 Letter cannot be read as an endorsement; i.e. a limiting part of the contract. "Limits to coverage, whether in exclusions, limitations, riders, or *endorsements*, should be set forth clearly and explicitly." *Fall River Cnty. v. S.D. Pub. Assurance Alliance*, 2001 S.D. 40, ¶ 8, 623 N.W.2d 735, 737 (emphasis added). The parties' "agreement" here was defined in the coverage documents as the Agreement "and any endorsements attached hereto." The endorsements issued by SDPAA were physically attached to the Agreement and explicitly stated that the "endorsement modifies the [Agreement] for this benefit only." The March 6 Letter was not attached to the Agreement, and the letter did not purport to modify, add, or delete any benefit or term of the coverage documents. The March 6 Letter only recited that County had "requested" retroactive coverage, recited that County "underst[ood]" the retroactive coverage limitations, and included a statement regarding County's knowledge of pre-existing incidents that could lead to losses. This letter – confirming a coverage request, confirming an understanding of a coverage limitation, and declaring County's knowledge of potential claims – contained *County's* statements and declarations. It was not an

endorsement *issued by SDPAA* modifying, adding, or deleting any term in the coverage documents. In substance, the March 6 Letter was no different than the excluded coverage communications. They all involved the parties' statements concerning retroactive zoning coverage and pre-existing incidents that could lead to claims or losses.

[¶16.]    Because, as we explain below, neither the March 6 Letter nor the excluded communications purport to vary, contradict, or change any term of the coverage documents, their admission for the purposes of litigating SDPAA's three coverage defenses would not have violated the parol evidence rule. For the same reason, the admission of the March 6 Letter would not have violated the integration clauses of the coverage documents.[4]

---

4.    The integration clauses of the coverage documents enumerated the documents that constituted the entire agreement between the parties. That enumeration would have only excluded conflicting pre-contract representations.

The Contract provided:

> This Agreement, the Appendix, and the Risk Sharing Certificate contain the complete Agreement between the parties and no representations or oral statements made or heretofore given shall constitute a part of this Agreement. In the event that any provision of this Agreement is in conflict with or is incompatible with the Appendix or attachments hereto or the Risk Sharing Certificate issued hereunder, the terms and conditions of this Agreement shall prevail and take precedence.

The Agreement provided:

> This [Agreement] and the [Contract] constitute the total agreement between you and us concerning the benefits afforded. The terms of the [Contract] may only be changed as stated in that document. The terms

(continued . . .)

*Coverage Communications*

[¶17.]     The circuit court ruled that the excluded coverage communications --
tending to show that SDPAA knew of the Thompson Farms dispute before entering
into the agreement -- contradicted the March 6 Letter and therefore violated the
parol evidence rule.  The circuit court's ruling misapprehended the nature and
effect of the parol evidence rule and the specific purposes for which the March 6
Letter and coverage communications were offered.

[¶18.]     South Dakota's parol evidence rule is codified in SDCL 53-8-5.  It
provides that "[t]he execution of a contract in writing, whether the law requires it to
be written or not, supersedes all the oral negotiations or stipulations concerning its
matter which preceded or accompanied the execution of the instrument."  We have
summarized the "nature and effect" of the rule:

> It is . . . well settled that parol evidence is inadmissible to *vary,
> contradict or add to a contract* which has been reduced to a
> writing that is clear, definite and complete, and in the absence
> of fraud, mistake or accident, it will be presumed that the
> written agreement expresses the final intention of the parties
> upon the subject matter of the contract.

*Carr v. Benike, Inc.*, 365 N.W.2d 4, 6 (S.D. 1985) (emphasis added).  Thus, "[i]t is a
long standing principle that parol or extrinsic evidence may not be admitted to vary
the terms of a written instrument or to add to or detract from the writing." *LaMore
Restaurant Group, LLC v. Akers*, 2008 S.D. 32, ¶ 30, 748 N.W.2d 756, 764.  The rule
is designed "to give legal effect to whatever intention the parties may have had to

_____

(. . . continued)
of this Agreement shall not be waived or changed except by
endorsement issued by us to form a part of this Agreement.

make their writing at least a final and perhaps also a complete expression of their agreement." E. Allen Farnsworth, *Contracts* § 7.3, at 418 (4th ed. 2004). *See also Johnson v. Coss*, 2003 S.D. 86, ¶ 21, 667 N.W.2d 701, 708 (noting that while parol evidence cannot be used to show the substance of an agreement, the evidence in that case was not offered to establish or change the agreement).

[¶19.]     SDPAA's first coverage defense was based on the contention that County did not provide timely notice of the Thompson Farms claim and that SDPAA was prejudiced by the delay. This defense was predicated on an Agreement provision providing that the "member must see to it that [SDPAA is] notified as soon as practicable of any situation or injury which may result in a claim." The defense was also predicated on a Contract provision that members of SDPAA had an obligation to "promptly report to [SDPAA] any incident which could result in a claim being made by or against the Member within the Scope of Coverage."

[¶20.]     The circuit court excluded the coverage communications because they would have contradicted the March 6 Letter. But there was no term in the March 6 Letter requiring timely notice: those terms were in the Contract and Agreement. Therefore, the jury decided this coverage defense not by determining the terms of the Contract and Agreement regarding notice, but by determining whether County complied with the uncontested terms of the Agreement and Contract requiring timely notice. The interrogatory to the jury on this defense instructed:

> Do you find by greater convincing force of the evidence that [County] failed to provide timely notice of the [Thompson Farms] zoning dispute *as required by the terms of the Agreement or Contract*?

If you answered Yes to the preceding question, do you find that [SDPAA] proved by greater convincing force of the evidence that [SDPAA] was prejudiced by the delay in providing notice of the [Thompson Farms] zoning dispute?

(Emphasis added.) The jury answered "yes" to both questions.

[¶21.] In sum, although the coverage communications contradicted portions of the March 6 Letter (stating that County had no knowledge of "any incidents that may result in a loss"), the letter was not a part of the coverage documents. Further, the excluded communications did not purport to change the terms of the Agreement and Contract requiring the County to provide notice of claims. Finally, the excluded communications were highly relevant. They were offered to prove compliance with the terms of the Agreement and Contract requiring timely notice. They were also offered to rebut SDPAA's allegation that it was prejudiced by the claimed delay in providing notice. Because the coverage communications were not offered to contradict any term of coverage or claims procedure, they did not violate the parol evidence rule.

[¶22.] SDPAA raised nondisclosure and misrepresentation as its second defense. SDPAA asserted that County failed to disclose or misrepresented the Thompson Farms situation when it applied[5] for coverage and when it "certified" in the March 6 Letter that it was "not aware of any incidents that may result in a loss." SDPAA's theory was also based on an uncontested term of the Agreement.

---

5.  County did not actually fill out the application for coverage. A representative of SDPAA filled it out based on oral responses provided by County. The application contains no disclosure of the Thompson Farms situation or any other possible claim or loss. The application provided in this record is not signed.

The Agreement provided: "This Agreement has been issued based upon our reliance on representations made by you in applying for this Agreement. Intentional nondisclosure or misrepresentation of any material fact may entitle us to void this Agreement and relieve us of any obligation hereunder."

[¶23.] With respect to this defense, the excluded communications conflicted with the March 6 Letter regarding County's knowledge of incidents that could result in claims or losses. But again, to decide this misrepresentation/non-disclosure defense, the jury was not asked to determine the terms of the Agreement. It was asked to answer a special interrogatory asking whether County failed to comply with the uncontested terms of the Agreement prohibiting nondisclosures and misrepresentations. The jury was asked:

> In order to determine whether [SDPAA] is not liable *under the Agreement or Contract* due to a misrepresentation, omission, concealment or incorrect statement, please answer "Yes" or "No" to a series of questions.
> 1) Do you find by clear and convincing evidence that [County]:
>     a) made a misrepresentation(s); or
>     b) made an omission of certain facts; or
>     c) concealed certain facts; or
>     d) made incorrect statements to [SDPAA] about the zoning dispute with E.L. Thompson Farms?
> 2) If you answered Yes to the preceding question, do you find by clear and convincing evidence that [SDPAA]'s knowledge as to the truth of the misrepresented, omitted, or concealed fact was:
>     a) material either to the acceptance of the risk, or to the hazard assumed by [SDPAA]; or
>     b) that if [SDPAA] had knowledge of the true facts, it would either;
>         i) not have issued the coverage; or
>         ii) would not have issued coverage at the same rate; or
>         iii) would not have issued coverage in as large an amount; or

iv) would not have provided coverage with respect to the E.L. Thompson Farms zoning dispute.

(Emphasis added.) The jury answered "Yes" to both questions.

[¶24.] The special interrogatory confirms that the coverage dispute was not over the terms of the parties' agreement. The dispute was whether County had complied with the terms of "the Agreement or Contract." Thus, like the coverage defense regarding timely notice, the excluded communications were not offered on the misrepresentation and nondisclosure defense to alter the terms of the coverage documents. Because the communications were not offered to contradict or modify any term of the coverage documents, the communications were improperly excluded as parol evidence.

[¶25.] SDPAA's final coverage defense was that the Thompson Farms claim was a "known loss" or a "loss in progress" when County applied for coverage. We have not been directed to a contract term in the coverage documents regarding known losses or losses in progress. The March 6 Letter also contained no purported term regarding this doctrine although it did contain County's statement that it understood no coverage was provided for known losses. It appears that SDPAA's coverage defense was based on a common-law theory, submitted to the jury in the form of an instruction providing:

> A doctrine in the law provides that losses which exist at the time of the inception of the coverage agreement or contract, or which are substantially probable to occur, are not proper subjects of insurance. *This doctrine exists independent of the particular terms of a coverage agreement or contract. . . .* The 'known loss' doctrine applies where the Member [County] knew or had reason to know that there was a substantial probability that loss or liability would result from the conduct for which it now seeks

coverage. The 'loss in progress' doctrine applies where the Member is aware of a threat of loss so immediate that it might be fairly said that loss was in progress at the time the coverage was requested or was issued.[6]

(Emphasis added.)

[¶26.]     The jury decided the known loss defense on a special interrogatory that

provided:

> In order to decide if the E.L. Thompson Farms zoning dispute
> was a known loss or loss in progress such that coverage does not
> exist, please answer "Yes" or "No" to the following questions.
> 1) Do you find by greater convincing force of the evidence that
> [County], at the time it applied for coverage with [SDPAA],
> a) knew or had reason to know that there was a substantial
> probability that loss or liability would result from Thompson
> Farms, or
> b) was aware of loss so immediate that it might be fairly said
> that loss was in progress at the time the coverage was requested
> or was issued?
> 2) If you answered Yes to the preceding question, do you find by
> greater convincing force of the evidence that [SDPAA] . . . did
> not contemplate that the E.L. Thompson Farms' claim would be
> covered by the Contract or the Agreement?

The jury answered "Yes" to the first question. Regarding question two, the jury

sent a note to the court stating it was "unclear on what is being asked." In

response, the court told the jury that "upon further consideration, the jury does not

need to answer question #2 of special interrogatory no. 3." The court indicated from

the bench that it did not think the question regarding SDPAA's contemplated

---

6.     Because neither party challenged this instruction, it became the law of the case. *See Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 20, 780 N.W.2d 507, 514. The Court expresses no opinion on the doctrines of "known loss" or "loss in progress."

coverage was necessary in light of the absence of evidence as to whether SDPAA contemplated coverage for the Thompson Farms claim.

[¶27.] The circuit court correctly observed that County presented no evidence that SDPAA contemplated coverage for the Thompson Farms claim as asked in question number two of special interrogatory number three. But that was because County's evidence on this point was the excluded coverage communications. Those communications, if admitted, could have been interpreted to show that SDPAA contemplated coverage. And again, the excluded communications did not contradict any term of the coverage documents. The excluded communications were offered only to disprove the common-law "known loss" doctrine, which under the law of this case existed "independent of the particular terms of coverage agreement or contract." Because the excluded coverage communications were not offered to alter or contradict any written terms of the agreement, their admission would not have violated  the parol evidence rule.

[¶28.] Reversed and remanded for a new trial.

[¶29.] GILBERTSON, Chief Justice, and KONENKAMP and SEVERSON, Justices, and BARNETT, Circuit Court Judge, concur.

[¶30.] BARNETT, Circuit Court Judge, sitting for MEIERHENRY, Retired Justice, disqualified.

[¶31.] WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.