#30190-a-MES
**2025 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JUDITH STURZENBECHER and
CODY STURZENBECHER,                     Plaintiffs and Appellees,

v.

SIOUX COUNTY RANCH, LLC,                Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

JOEL R. RISCHE
REECE M. ALMOND of
Davenport, Evans, Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota                Attorneys for defendant
                                         and appellant.


RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

PAMELA R. REITER
ANTHONY P. SUTTON of
Reiter Law Firm, Prof. LLC
Sioux Falls, South Dakota                Attorneys for plaintiffs
                                         and appellees.

* * * *

ARGUED
NOVEMBER 9, 2023
OPINION FILED **04/16/25**

#30190

SALTER, Justice

[¶1.]    In 2020, Cody Sturzenbecher and his mother, Judy Sturzenbecher, and Sioux County Ranch, LLC (Sioux County) entered into several related transactions all connected to the purchase of the Sturzenbechers' family farm from a trust in which Judy held a beneficial interest. Under the arrangement, Judy purchased the farm from the trust using the proceeds of a loan from Sioux County. She then conveyed the property to Sioux County under the terms of a purchase agreement, and Sioux County leased the farm to Cody. The lease required Cody to make annual payments and contained an option to purchase the property at a predetermined price. Cody defaulted under the terms of the lease, and Sioux County terminated the lease agreement and listed the property for sale.

[¶2.]    The Sturzenbechers sought declaratory and injunctive relief, arguing that Judy's conveyance of the farm to Sioux County created an equitable mortgage and was not an absolute sale. The circuit court granted Sturzenbechers' request for a preliminary injunction, and also denied Sioux County's motion for judgment on the pleadings. Sioux County has appealed both decisions. We affirm.

## Factual and Procedural Background

[¶3.]    Arnold and Clara Wollman owned 1,041 acres of agricultural property in Turner County. They later transferred the land into a living trust (the Trust) for their benefit, with the remainder to their children—Judy and her three sisters—each of whom would receive a one-fourth interest in the Trust property. Arnold passed away and then Clara, at which time the terms of the Trust became irrevocable.

-1-

[¶4.] Judy was the only daughter to remain on the farm; she lived there with her family. At the time of Clara's death, Judy's adult son Cody was renting 70 acres from the Trust. The entire 1,041-acre real estate holding was valued in excess of $4 million.

[¶5.] After Clara's death, the institutional trustee began making arrangements to sell the property. Judy and Cody were interested in purchasing the family farm and avoiding a public sale, but their efforts to obtain traditional financing from a bank were unsuccessful.[1]

[¶6.] The Sturzenbechers later learned about Sioux County, a Nebraska-registered limited liability company that regularly works with farmers attempting to purchase land, but who are unable to obtain financing. Using a similar approach, the Sturzenbechers and Sioux County entered into a multifaceted arrangement that was designed to ultimately provide Cody with an opportunity to purchase the property.

[¶7.] First, Sioux County extended a short-term loan to Judy of $4.25 million using funds Sioux County had borrowed from Farm Credit Services. With the $4.25 million, Judy purchased the property from her parents' Trust. She then immediately sold the land to Sioux County for $3,187,500 and further assigned her $1,062,500 distribution from the Trust to Sioux County, both to satisfy her $4.25 million debt.

---

1. We will refer to Cody and Judy collectively as the Sturzenbechers and note further that other members of their family, including Judy's husband and another son, had varying degrees of interaction with Sioux County in what can fairly be described as a family effort to purchase the entire Wollman farm.

[¶8.]     Next, Cody entered into a lease agreement for the land with Sioux County. The term of the lease was five years, and Cody's annual lease payments were $229,000. The lease included an option that allowed Cody to purchase the land for $3,825,000 after five years.

[¶9.]     Both the Sturzenbechers and Sioux County were represented by counsel during their negotiations, and each sequential aspect of their arrangement was memorialized in the following written agreements:

1)     A promissory note for the $4.25 million loan from Sioux County to Judy;

2)     A mortgage and security agreement securing Judy's $4.25 million loan from Sioux County;

3)     An assignment and security agreement that provided, among other things, for an assignment of Judy's distributions from the Trust to Sioux County;

4)     A purchase agreement pursuant to which Judy sold the land she had purchased from the Trust to Sioux County for $3,187,500 and crediting that amount against the $4.25 million loan;[2] and

5)     A lease agreement between Cody and Sioux County, describing the term, annual lease payment obligation, and the option to purchase the farm for $3,825,000.

[¶10.]     These documents were dated and signed on January 14, 2021. The closing for Judy's purchase of the land from the Trust and her subsequent sale to Sioux County occurred in March 2021, which is also when Sioux County's lease to Cody commenced. Cody made his first $229,000 lease payment for 2021 but not the 2022 payment that was due on March 1. In the time following the March 1, 2022

---

2.     The purchase agreement referenced the five-year lease and designated the execution of the lease as a condition to Sioux County's obligation to close.

due date, Sioux County approved Cody's request to sublet the property to another tenant for $229,000 per year, which would be paid directly to Sioux County, but Sioux County never received the rent payment.

[¶11.]     On April 13, 2022, Judy texted John Koerselman, one of the owners of Sioux County, stating, "I now have the money secured for the rent & the late fees. We are also submitting a proposal offer."  However, in a series of text messages over the next several days, it was clear that Cody did not pay the rent.  Sioux County leased the land to another tenant, but communications between the parties continued in an effort by the Sturzenbechers to purchase some or all of the land. These negotiations, however, required additional time to complete any potential sale, and Sioux County decided to sell the property through an online public auction scheduled to take place in July 2022.

[¶12.]     Judy learned of the planned sale through a Facebook post.  In response, the Sturzenbechers filed this action requesting declaratory relief, alleging ownership of the land based on an equitable mortgage theory that posited their arrangement with Sioux County was not an absolute sale, but actually a financing arrangement, implicating statutory foreclosure rules and a redemption period.  The Sturzenbechers also claimed that the arrangement with Sioux County was unconscionable.  They sought a temporary restraining order and preliminary injunction to prevent Sioux County's proposed sale.

[¶13.]     The circuit court granted a temporary restraining order (TRO),[3] which halted plans for the July online auction.  The court also set the preliminary injunction hearing for early September.  In the interim, Sioux County filed an answer and a motion for judgment on the pleadings.[4]

[¶14.]     The circuit court held a hearing on the parties' motions and took evidence on the Sturzenbechers' preliminary injunction motion, including extrinsic evidence related to the parties' subjective intent concerning the purchase-and-lease arrangement.  For instance, Judy testified that she knew Sioux County held title to the property, but she stated that she did not intend the deed to transfer ownership to Sioux County.  The court also received evidence relating to the parties' negotiations in the form of emails and text messages by and between the parties and their respective attorneys.  The Sturzenbechers engaged different counsel for this litigation, but their former attorney submitted an affidavit in which he stated that "the only deal . . . is that which is reflected in the agreements that were signed by the parties."  And Koerselman testified that Sioux County was not in the business of extending loans.  Its intent, he stated, was to own the property under the terms outlined in the five agreements.

[¶15.]     In a memorandum decision, the circuit court denied Sioux County's motion for judgment on the pleadings and granted the Sturzenbechers' request for a preliminary injunction, finding, among other things, that the Sturzenbechers were

---

3.     The TRO was issued following notice to Sioux County, which appeared through counsel and opposed the Sturzenbechers' request.

4.     Sioux County also filed a counterclaim against Cody alleging a breach of the lease agreement.

likely to succeed on their equitable mortgage claim. Central to both rulings was the court's conclusion that it was authorized to consider the testimony of the parties and witnesses in determining the true nature of the transaction. The court stated, "Equity allows the court to go beyond the written transaction and look at the intent of the parties by looking at the circumstances."

[¶16.]     Sioux County appeals, raising the following two issues for our review:

1.     Whether the circuit court abused its discretion when it granted the Sturzenbechers' motion for a preliminary injunction.

2.     Whether the circuit court erred when it denied Sioux County's motion for judgment on the pleadings.

**Analysis and Decision**

*Motion for Preliminary Injunction*

[¶17.]     "We will not disturb a ruling on injunctive relief unless we find an abuse of discretion." *Strong v. Atlas Hydraulics, Inc.*, 2014 S.D. 69, ¶ 10, 855 N.W.2d 133, 138 (quoting *Halls v. White*, 2006 S.D. 47, ¶ 4, 715 N.W.2d 577, 579). We review the circuit court's findings of fact under a clearly erroneous standard and give no deference to its conclusions of law. *Id.*

[¶18.]     Injunctive relief is an equitable remedy. *Metropolitan Life Ins. Co. v. Jensen*, 69 S.D. 225, 230, 9 N.W.2d 140, 142 (1943). And it is well settled that equity only applies if there is an inadequate remedy at law. *Holzworth v. Roth*, 78 S.D. 287, 291, 101 N.W.2d 393, 395 (1960). A party seeking a preliminary injunction must prove (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of injunctive relief, (3) a favorable balance of the relative equities, and (4) that an injunction is in the public interest. *Hedlund v.*

*River Bluff Estates, LLC*, 2018 S.D. 20, ¶ 15, 908 N.W.2d 766, 771 (citation omitted).

[¶19.]      The principal issue in this appeal relates to the circuit court's determination that the Sturzenbechers were likely to succeed on the merits of their equitable mortgage theory. This requires our review of whether the arrangement between the Sturzenbechers and Sioux County was an equitable mortgage or an absolute sale. To do so, it is helpful to first reflect on the justification for equitable mortgages and the nature of the relief.

### *Equitable mortgages and parol evidence*

[¶20.]      As its name suggests, an equitable mortgage contemplates the exercise of a court's equitable power. The equitable relief comes in the form of requiring a creditor to abide by rules governing express mortgages, such as affording a redemption period for a debtor in default. But equity is not necessary to determine what the parties intended by their agreement through extrinsic or parol evidence. Whether this type of evidence is necessary is determined by the application of our well-settled rules regarding contract interpretation.

[¶21.]      Generally, we have held that the parties' unambiguous agreement controls in subsequent disputes concerning their intent. *See, e.g., Hanson v. Vermillion School Dist. No. 13-1*, 2007 S.D. 9, ¶ 28, 727 N.W.2d 459, 468 (citation omitted) (stating that where the agreement is unambiguous, "there is no need to go beyond the four corners of the contract'"); *Roseth v. Roseth*, 2013 S.D. 27, ¶ 14, 829 N.W.2d 136, 142 (citation omitted) (stating "the intent of the parties can be derived from within the four corners of the contract'"); *Am. State Bank v. Adkins*, 458

N.W.2d 807, 810 (S.D. 1990) (concluding intent is found in the unambiguous language of the contract); *Quick v. Bakke, Kopp, Ballou & McFarlin, Inc.*, 380 N.W.2d 364, 366 (S.D. 1986) (stating "speculation should not be used to alter the unequivocal language of the agreement").

[¶22.]     Therefore, where a contract is "clear, unambiguous, and fully integrated," the parol evidence rule bars admission of extrinsic evidence. *Oxton v. Rudland*, 2017 S.D. 35, ¶ 14, 897 N.W.2d 356, 360; *see also* SDCL 53-8-5 (stating that a written contract "supersedes all oral negotiations"). Only if there is fraud or some other exception applies will parol evidence be permitted. *See Oxton*, 2017 S.D. 35, ¶ 14, 897 N.W.2d at 360 (citation omitted) (stating that "the parol evidence rule does not apply in cases of fraud in the inducement"); *see also, e.g.*, *Genevieve J. Parmely Revocable Tr. v. Magness*, 2023 S.D. 49, ¶ 15, 996 N.W.2d 362, 367 (explaining extrinsic evidence may be offered to prove a collateral oral agreement).

[¶23.]     Here, the Sturzenbechers do not argue that an exception to the parol evidence rule applies; nor do they argue that their written agreements with Sioux County are ambiguous. Under the circumstances, the circuit court should not have permitted extrinsic evidence concerning the parties' subjective intent. The "equitable" part of the equitable mortgage doctrine does not empower a court to embark on an after-the-fact determination of intent when the agreement between the parties is unambiguous, and our principal equitable mortgage decisions did not involve complete and unambiguous agreements. But even in these decisions, our parol evidence rules—and not equity—supports our inquiry into intent.

[¶24.]        For instance, in *Adrian v. McKinnie*, the parties considered the option of executing a promissory note and mortgage to secure a debt on real estate, but the creditor wanted to ensure his priority over the debtors' other would-be creditors. 2002 S.D. 10, ¶ 4, 639 N.W.2d 529, 531–32. The creditor, therefore, instead opted for a bare deed from the debtors, delivered in conjunction with a lease agreement and an option to purchase. *Id.* In the absence of an overarching document that definitively stated the arrangement of the parties, we recognized the need and utility for extrinsic evidence that illuminated the parties' true intentions. *See id.* ¶ 11, 639 N.W.2d at 533 (citing *Fuller v. Middaugh*, 76 S.D. 288, 77 N.W.2d 841, 842 (1956)) ("This controlling intention must be gleaned from the written memorials and all the surrounding circumstances.").

[¶25.]        Similarly, in *Myers v. Eich*, there was no question that at the inception of their relationship, the parties were engaged in a debtor/creditor relationship that was initially evidenced by a writing describing a loan and a "purchase" of the debtor's real estate "for $1.00" in order "[t]o provide security to [the creditor] for this transaction." 2006 S.D. 69, ¶ 4, 720 N.W.2d 76, 78. As the parties' debtor/creditor relationship deepened with more loans and spotty repayment, the parties executed a contract for deed and two purchase agreements. *Id.* ¶¶ 6–13, 720 N.W.2d at 79–81. But these belated documents were conceived as a basis to salvage a deteriorating business relationship and did not alter the undisputed intent of the parties at the inception of their relationship. *Id.* ¶¶ 24–29, 720 N.W.2d at 83–85.

[¶26.] And nearly a century before either *Myers* or *Adrian*, we held that the terms of a written agreement have primacy over parol evidence when examining whether a conveyance of real estate is absolute or a security device:

> Conveyances absolute in form are held to be mortgages when it is shown that such was the intention of the parties. The true nature of the transaction, the contract of the parties, may be shown by parol [evidence], provided they have not expressed their understanding in writing; but "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning the matter, which preceded or accompanied the execution of the instrument."

*Gardner v. Welch*, 21 S.D. 151, 110 N.W. 110, 112 (1906) (quoting Rev. Civ. Code, § 1239, now codified at SDCL 53-8-5).

[¶27.] But the fact that the circuit court erred by considering extrinsic evidence does not necessarily preclude the equitable relief the Sturzenbechers seek—a right to redeem the real property. And the plain fact that the parties' agreements are unambiguous does not mean that they are necessarily enforceable.

### *Public policy regarding redemption rights*

[¶28.] Among the requirements for all valid contracts is conformity with the public policy of our State, as expressed in our published decisions, statutes enacted by the Legislature, and our constitution. *See Two Eagle v. Avel eCare, LLC*, 2025 S.D. 3, ¶ 24, 17 N.W.3d 242, 249 (quoting *Oesterreich v. Canton-Inwood Hosp.*, 511 N.W.2d 824, 827 (S.D. 1994)) ("The primary sources for declarations of public policy in South Dakota are the constitution, statutes, and judicial decisions."); *see also* SDCL 53-9-1 (stating a contract whose provisions are "contrary to an express

provision of law . . . is unlawful"). This restriction applies immutably to all contracts, including those which are unambiguous.

[¶29.] In South Dakota, the public policy favoring a mortgagor's right of redemption is strong. And our recognition that courts may use equity to reform a purported absolute sale is consistent with a longstanding public policy, here and elsewhere, prohibiting contracts that restrain a debtor's right of redemption. *See* SDCL 44-1-8 ("All contracts for forfeiture of property subject to a lien in satisfaction of the obligation secured thereby and all contracts in restraint of the right of redemption from a lien are void."); *see also Fort v. Colby*, 144 N.W. 393, 403 (Iowa 1913). "It firmly is established that a mortgagor may not, at the time of, nor as a part of, the mortgage transaction, bargain away his equity of redemption." *FarmPro Servs., Inc. v. Finneman*, 2016 S.D. 72, ¶ 17 n.6, 887 N.W.2d 72, 78 n.6 (quoting *O'Connor v. Schwan*, 251 N.W. 180, 181 (Minn. 1933)). "Any attempt by the mortgagor so to do will not be enforced by a court of equity." *O'Connor*, 251 N.W. at 181; *see also Sannerud v. Brantz*, 928 P.2d 477, 481 (Wyo. 1996); 55 Am. Jur. 2d Mortgages § 375.

[¶30.] For this reason, our cases demonstrate our inclination to undertake a careful, substance-over-form assessment of an agreement so that a putative creditor cannot use artful drafting to "cause a forfeiture of the [party's] right of redemption[.]" *Myers*, 2006 S.D. 69, ¶ 32, 720 N.W.2d at 86 (alteration in original) (citation omitted); *see also NBC Leasing Co. v. Stilwell*, 334 N.W.2d 496, 498 (S.D. 1983) (considering whether a lease for irrigation equipment was actually a "disguised loan" implicating the public policy established by usury laws). Because a

real estate mortgage is merely a lien and not a transfer of title, "[w]hen the transaction is shown to be a mortgage, then . . . the mere fact that the deed is absolute in form will have no effect in a court of equity." *Shimerda v. Wohlford*, 13 S.D. 155, 82 N.W. 393, 394 (1900); *see also Myers*, 2006 S.D. 69, ¶ 21, 720 N.W.2d at 82 (citation omitted) ("Equity requires that the transaction be treated according to its substance and effect, not its form.").

**The Sturzenbecher/Sioux County arrangement**

[¶31.] Determining contractual intent in a case like this requires us to review the five agreements between the parties as a single, concerted transaction in order to determine the intended nature of the parties' overarching arrangement. *See S.D. Pub. Assur. All. v. Aurora Cnty.*, 2011 S.D. 53, ¶ 14, 803 N.W.2d 612, 617 (citation omitted) ("All writings that are executed together as part of a single transaction are to be interpreted together."); *see also*, *Muller v. Flavin*, 13 S.D. 595, 83 N.W. 687, 690 (1900) ("It is sufficient if the court is satisfied from the documentary evidence connected with the transaction that it was intended that the transaction should constitute a mortgage.").

[¶32.] We must also consider the five areas of inquiry we have identified as relevant markers, or characteristics, of a prototypical financing arrangement purporting to be an absolute sale. "[I]f present, [these features] favor a finding that a conveyance, absolute on its face, constitutes an equitable mortgage[.]" *Myers*, 2006 S.D. 69, ¶ 25, 720 N.W.2d at 83–84. These features include:

> (1) pre-existing debt not extinguished with conveyance;
> (2) conveyance made with agreement to re-convey;
> (3) property value considerably more than the debt;

(4) property in original transaction not appraised and no discussion of its value in relation to sale price; and
(5) dealings between the parties akin to that of creditor-debtor.

*Id.*; *see also Adrian*, 2002 S.D. 10, ¶ 11, 639 N.W.2d at 533. Here, each of these characteristics is present, and we must conclude the agreements between the Sturzenbechers and Sioux County were designed, at bottom, to finance the Sturzenbechers' purchase of the Property from the Trust.

>1.      *Pre-existing debt not extinguished*

[¶33.]      "One of the essential elements of a mortgage is debt to be secured," and this entire transaction was premised on Judy borrowing $4.25 million from Sioux County to purchase the Property from the Trust at an interest rate of 4%. *Id.* (quoting *Am. Nat. Bank v. Groft*, 56 S.D. 460, 229 N.W. 376, 379 (1930)). Although the note, mortgage, and purchase agreement were executed simultaneously, the purchase money debt incurred by Judy to buy the Property pre-existed the actual conveyance to Sioux County. The purchase agreement provided that $3,187,500 of the loan would be "reduced" upon Judy's conveyance of the Property to Sioux County, but the promissory note, mortgage, assignment and security agreement, and the purchase agreement all contemplated that Judy's debt would not be fully extinguished, as she would still owe $1,062,500 after conveying the Property to Sioux County.

[¶34.]      In addition, the terms of the lease and option agreement show that the $3,187,500 of indebtedness that was to be "reduced" upon the conveyance to Sioux County was never intended to be extinguished at the time the deed was conveyed. This intent is evidenced by the fixed option price of $3,825,000—a $637,500 increase over the original purchase price of $3,187,500—which corresponds exactly to the 4%

per annum simple interest accruing on $3,187,500 of debt over a period of five years, as specified under the terms of the note. In effect, the parties intended that the $3,187,500 loan, plus the 4% annual interest accruing on that debt over the five-year period, would be paid at the time the option was exercised.

2. *Conveyance made with agreement to re-convey*

[¶35.] Second, the conveyance was made with an agreement to re-convey the Property. The option for Cody to repurchase the Property after five years was contingent upon Judy satisfying the remaining debt to Sioux County and Cody satisfying his financial obligations under the lease and option agreement, including $3,187,500 of indebtedness, plus interest. Sioux County was obligated to reconvey the Property to Cody upon payment of these obligations. Further, the parties intended that Sioux County would never assume possession of the Property so long as Judy and Cody satisfied these obligations. Like in *Myers*, the fact that the promissory note, mortgage, purchase agreement, lease, and option "were executed on the same day creates a strong doubt on whether this transaction was intended to be a sale [to Sioux County]." 2006 S.D. 69, ¶ 27, 720 N.W.2d at 84; *see also Muller*, 13 S.D. 595, 83 N.W. at 690 ("Where the transaction is a continuous one, and the conveyance is made by the grantor upon the express understanding that a reconveyance shall be made to a third party upon the repayment of the amount advanced, with interest, and that third party stipulates to pay the amount absolutely, the transaction will be held in a court of equity as a mortgage.").

### 3. *Property value considerably more than the debt*

[¶36.]     Third, the parties agreed that the value of the Property exceeded the $4.25 million debt incurred by Judy.  The purchase agreement allowed Sioux County to terminate the agreement if the appraised value of the Property was less than $4,547,250, thereby providing Sioux County with an immediate equity cushion in the Property of $300,000.  Further, the parties agreed that Judy would sell the Property to Sioux County for $3,187,500—a discount of $1,062,500 from the $4.25 million she would pay the Trust.  Since Sioux County also held a fully secured and assigned interest in the $1,062,500 Trust distribution Judy was to receive, Sioux County effectively had equity of more than $1,362,500 in the Property.  This was sufficient to cover all the debt, interest on the debt over five years, and the other financial obligations to Sioux County.  These provisions further indicate an intention that the deed was to function as security for the loan rather than a bona fide sale.

### 4. *Property appraised but no discussion of its value in relation to sale price*

[¶37.]     Fourth, Sioux County had the Property appraised, but it neither shared the appraisal with the Sturzenbechers, nor was it used to establish a fair market value for the Property for sale purposes.  The appraisal, which valued the Property at $4.5 million, was entirely unconnected to the agreed sale price; Sioux County paid $1.3 million less than the appraised value.

[¶38.]     If this transaction were actually intended as a sale, it "defies logic" to conclude that the Sturzenbechers agreed to sell the Property for $1 million less than the $4.25 million price they paid that same day, let alone $1.3 million less than its

appraised value of $4.5 million, while simultaneously committing to pay an additional $1,062,500; $229,000 annually in rent for five years; $63,750 to exercise the purchase option; and then $3,825,000 to repurchase the Property. *See Myers*, 2006 S.D. 69, ¶ 27, 720 N.W.2d at 85. Such an arrangement indicates the transaction was structured as security for the original debt to Judy rather than an absolute sale to Sioux County.

### 5. *Dealings between the parties akin to that of creditor-debtor*

[¶39.]     Finally, the terms of the original note, mortgage, assignment and security agreement, and the sale price in relation to the Property's market value all demonstrate a relationship consistent with that of a debtor and creditor rather than a seller and buyer. The agreements allowed the Sturzenbechers to retain possession of the Property and ultimately repurchase it, conditioned upon their fulfillment of their financial obligations. The option for Cody to repurchase the Property was not based upon fair market value but instead on the debt owed by Judy, plus interest accruing over the five-year term. This structure demonstrates an intention to create a traditional debtor-creditor relationship rather than a sale transaction.

[¶40.]     Moreover, the original purchase money mortgage and the lease agreement impose many of the same obligations on the Sturzenbechers that a lender would expect of a borrower, including responsibilities for insurance, taxes, utilities, and the general care of the Property. The fact that the lease mirrored many of the mortgage's provisions indicates that Sioux County intended to preserve its financial security in the event of default, even after the conveyance of the deed.

[¶41.]     Disregarding the extrinsic evidence the court erroneously received, we conclude that the overall intent and effect of the parties' arrangement resulted in an unmistakable financing agreement.  Therefore, the summary default procedures allowing Sioux County to simply sell the Property violate public policy and are unenforceable because they do not allow the Sturzenbechers a statutory right to redeem the Property.  Consequently, the circuit court did not err in concluding that the Sturzenbechers were likely to succeed on their equitable mortgage theory and did not abuse its discretion in granting the injunctive relief.

### Motion for judgment on the pleadings

[¶42.]     Though Sioux County may properly appeal the circuit court's decision to grant a preliminary injunction as a matter of right, *see* SDCL 15-26A-3(5), we have held that generally "[a]n order denying judgment on the pleadings is an interlocutory order and is not appealable." *Nelsen v. Menno State Bank of Menno*, 53 S.D. 398, 220 N.W. 850 (1928); *see also Prater v. Dahm*, 89 F.3d 538, 540 (8th Cir. 1996) ("Ordinarily, a denial of a motion for judgment on the pleadings is not considered a final, appealable order[.]").[5]  For this reason, we asked the parties, before oral argument, to be prepared to discuss the appealability of the circuit court's denial of Sioux County's motion for judgment on the pleadings on the Sturzenbechers' equitable mortgage and unconscionability claims.

[¶43.]     Both parties agreed during argument that we could review the circuit court's denial of Sioux County's motion for judgment on the pleadings as to the

---

5.     The Court has recognized that federal court decisions can assist our efforts to interpret our corresponding rules. *Matter of Estate of Tank*, 2023 S.D. 59, 998 N.W.2d 109, 120.

equitable mortgage claim because it was "relevant" to the order granting the Sturzenbechers' motion for a preliminary injunction. *See* SDCL 15-26A-10 ("When the appeal is from any order subject to appeal, the Supreme Court may review all matters appearing on the record *relevant* to the question of whether the order appealed from is erroneous.") (emphasis added).

[¶44.]        We agree and conclude that the circuit court's order denying judgment on the pleadings on the Sturzenbechers' equitable mortgage claim is relevant to the preliminary injunction order because the preliminary injunction was granted on the basis of the equitable mortgage claim. The unconscionability claim, however, is not relevant to the preliminary injunction; it did not form a basis for the court's decision to grant the preliminary injunction, it implicates different legal principles, and it was pled as a separate, alternative basis for declaratory relief.[6] Consequently, we have jurisdiction to review the court's denial of Sioux County's motion for judgment on the pleadings on the equitable mortgage claim but not on the unconscionability claim.

[¶45.]        "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. . . ." SDCL 15-6-12(c). "Judgment on the pleadings provides an expeditious remedy to test the legal sufficiency, substance, and form of the pleadings. However, it is only an appropriate remedy to resolve issues of law when there are no remaining issues of fact." *In re Estate of Lester*, 2014 S.D. 73, ¶ 3, 855 N.W.2d 876, 878 (citation

---

6.      At oral argument, counsel for the Sturzenbechers stated that, in his view, the unconscionability claim was not relevant to the preliminary injunction, though he recognized the Court has broad authority under SDCL 15-26A-10.

omitted). A motion for judgment on the pleadings can be granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Hodges v. S.D. Sch. of Mines & Tech.*, 647 F. Supp. 3d 761, 766 (D.S.D. 2022) (citation omitted). "The Court must accept as true the facts in the complaint and draw all reasonable inferences in the favor of the nonmoving party." *Id.*

[¶46.] "When considering a motion for judgment on the pleadings, the court considers 'the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.' . . . In general, materials embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Id.* (internal citation omitted). We review a ruling on a motion for judgment on the pleadings de novo. *Slota v. Imhoff & Assocs., P.C.*, 2020 S.D. 55, ¶ 12, 949 N.W.2d 869, 873 (citations omitted).

[¶47.] The circuit court denied the motion for judgment on the pleadings, concluding that the Sturzenbechers pled sufficient facts in their complaint to support their equitable mortgage claim. Considering the pleadings, the attached exhibits, and the references to the parties' agreements, we conclude that the Sturzenbechers pled sufficient facts to support their claim for declaratory and injunctive relief, and the court correctly denied Sioux County's motion for judgment on the pleadings.

**Conclusion**

[¶48.] The parties have presented an either/or dichotomy, suggesting the equitable mortgage claim either is sustainable because it is supported by extrinsic evidence, or it is not because the unambiguous text of the parties' several agreements definitively establishes an absolute sale. Neither is the case.

[¶49.] We conclude, instead, that the agreements are both unambiguous *and* unenforceable as an absolute sale of the Property. In making this determination, we have not crossed a legal Rubicon by diminishing the significance and general primacy of unambiguous agreements. We have simply relied upon our established authority to determine the substance of an agreement over its form and, ultimately, to declare the public policy of this State.

[¶50.] The circuit court's decisions to grant the Sturzenbechers' motion for a preliminary injunction and to deny Sioux County's motion for judgment on the pleadings are affirmed, and the case is remanded for further proceedings consistent with this decision.

[¶51.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.